Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: 650-781-8000
Facsimile: 650-648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff*
and the Putative Class

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DISTRICT

| | |
|---|---|
| DENNIS BORN, individually and on behalf of all others similarly situated<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>CELTIC MARKETING, LLC D/B/A VAD also known as CM AUTO, a limited liability company, SUNPATH LIMITED CORP., a Delaware corporation, NORTHCOAST WARRANTY SERVICES, INC., a Delaware corporation, JOHN DOE 1, an unknown business entity<br><br>　　　　　　　　Defendants. | Case No.:  8:19-cv-01950<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

　　1.　　Plaintiff DENNIS BORN ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant CELTIC MARKETING, LLC D/B/A VAD also known as CM AUTO, a limited liability company, Defendant SUNPATH LIMITED CORP., ("Defendant Sunpath") Defendant NORTHCOAST WARRANTY SERVICES, INC., ("Defendant Northcoast") and Defendant JOHN DOE 1 ("John Doe 1") (together, "Defendants") to stop their illegal practice of making unauthorized calls that play prerecorded voice messages to the cellular telephones of consumers nationwide, and to

1

COMPLAINT

obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorney.

## NATURE OF THE ACTION

2. Defendants sell and provide "vehicle protection" contracts. As a primary part of marketing their products and services, Defendants and their agent John Doe 1 placed thousands of placed thousands of automated calls to consumers' cellular and residential phones nationwide.

3. Defendants did not obtain consent prior to placing these calls and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

5. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendant's use of technological equipment to spam consumers with its advertising on a grand scale.

6. By placing the calls at issue, Defendants violated the privacy and statutory rights of Plaintiff and the Class.

7. Plaintiff therefore seeks an injunction requiring Defendants, to stop its unconsented calling, as well as an award of actual and statutory fines to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

8. Plaintiff DENNIS BORN is a natural person and is a citizen of the District of Wisconsin.

9. Defendant CELTIC MARKETING, LLC ("Defendant VAD") is a limited liability company organized and existing under the laws of the State of Arizona with its principal place of business at 2102 Business Center Dr. 120, Irvine, CA 92612. VAD's registered agent on file with the secretary of state of Arizona is Joe Mccormick, 8961 E Bell Rd #101, SCOTTSDALE, AZ 85260.

10. Defendant Sunpath is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 50 Braintree Hill Park Ste 310, Braintree, Massachusetts 02184-8704.

11. Defendant Northcoast is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 800 Superior Avenue East, 21St Floor, Cleveland, Ohio 44114.

12. Defendant John Doe 1 is an unknown business entity.

## JURISDICTION AND VENUE

13. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

14. This Court has personal jurisdiction over Defendants because the events giving rise to this lawsuit occurred in this District.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in this District.

16. Defendants sell and administer vehicle protection plans.

17. To increase the sales of their vehicle protection plans and avoid paying for legitimate and legal forms of advertising, Defendants implemented a campaign to make telemarketing calls to thousands of consumers around the country simultaneously. Specifically, Defendants amassed the names, phone numbers, and vehicle information for thousands of consumers, from unknown sources, and then placed unsolicited calls offering vehicle protection plans.

18. When the Class members answered their cellular phones, they heard silence for several seconds and a distinct "click" sound before being transferred to a live agent, which denotes the use of an automatic telephone dialing system.

19. Defendant and its authorized agents including John Doe 1, failed to obtain consent from Plaintiff and the Class before bombarding their phones with their illegal calls.

**FACTS SPECIFIC TO PLAINTIFF DENNIS BORN**

20. On August 13, 2019, Plaintiff received a call at 1:32 p.m. on his cell phone.

21. The caller ID displayed the telephone number calling Plaintiff as 920-980-7352.



22. When Plaintiff answered the phone, he heard silence for several seconds before a "click" and a live person responded, which indicated to Plaintiff that the call was made by an automatic telephone dialing system.

23. The live agent informed Plaintiff that he was selling vehicle protection plans.

24. The live agent had obtained identifying information about Plaintiff including the VIN number for Plaintiff's vehicle and Plaintiff's name. Plaintiff did not provide this information.

25. The live agent did not identify what company the live agent was calling from during the call.

26. Plaintiff did not want or need a vehicle protection policy. However, in order to cease harassment from anonymous robocallers such as Defendants, Plaintiff purchased a vehicle protection policy for the sole purpose of identifying who was calling and/or the company who was responsible for calling.

27. When Plaintiff received the policy, he discovered that the parties were responsible for the robocall were Defendants Sunpath, Northcoast, and VAD.

28. Plaintiff never consented to receive calls from Defendants. Plaintiff has no relationship with Defendants and has never requested that Defendants contact him in any manner.

## CLASS ALLEGATIONS

29. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), and 23(b)(3) on behalf of himself and a class defined as follows:

> **No Consent Class**. All persons in the United States who: (1) from the last 4 years to the filing of this action (2) received at least one telephone call; (3) on his or her cellular telephone; (4) that used an automatic telephone dialing system; (5) for the purpose of promoting Defendant's services; (6) where Defendant did not first obtain the person's express written consent.

30. The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been

finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

31. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

32. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

33. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

34. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

35. **Commonality and Predominance**: There are many questions of law and fact common to theclaims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    i.    Whether Defendants' conduct violated the TCPA;

    ii.    Whether Defendants' conduct violated the TCPA *willingly* and/or *knowingly*;

    iii.    Whether Defendants' used an automatic telephone dialing system to place calls to thousands of cell phones;

    iv.    Whether Defendants' obtained prior written consent prior to contacting any members of the Class;

    v.    Whether members of the Class are entitled to treble damages based on the knowingness or willfulness of Defendants' conduct.

36. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## BASIS FOR LIABILITY

Plaintiff alleges that even if Defendant claims that it did not make the TCPA violating robocall to Plaintiff directly, Defendant is liable for the TCPA violating robocall under the following theories of liability: (1) Direct Liability, (2) Actual Authority, (3) Apparent Authority, (4) Ratification, (5) Acting in Concert, and (6) Joint Enterprise.

## DIRECT LIABILITY

37. Defendants' scheme involves the use of illegal robocalling to promote their services.

38. Defendants' practice of outsourcing its robocalling to a third-party company does not absolve them from direct liability under the TCPA.

39. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

## AGENCY ALLEGATIONS

40. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n. 107.

41. Prior to conducting discovery in this litigation, due to the anonymous nature of robocalling, Plaintiff has no way to identify the exact relationship between Defendants.

42. However, for the purposes of TCPA liability, Plaintiff is not expected to know this information at the pleading stage.

43. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id*. at 6592-593 (¶ 46).

## ACTUAL AUTHORITY

44. Defendants Sunpath and Northcoast authorized Defendant VAD to generate prospective customers. VAD hired John Doe 1 to promote Defendants' products pursuant to robocalling. Defendant Sunpath and Northcoast's integration of robocalling into its sales process was so seamless that it appeared to an outside party like Plaintiff that Defendant VAD was the telemarketing department of Defendants Sunpath and Northcoast.

45. Defendant John Doe 1 was hired by Defendants VAD, and acted in concert with Defendant Sunpath and Northcoast, which permitted Defendant Sunpath and Northcoast to enjoy the benefits of mass robocalling while moving the illegal activity "outside their purview."

46. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

47. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id*. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

48. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for

telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

49.     Defendant John Doe 1 solicited Plaintiff on behalf of Defendants VAD, Sunpath and Northcoast and had actual authority from Defendants to solicit Plaintiff by using an automatic telephone dialing system.

50.     The actual authority of Defendant VAD is illustrated in the vehicle protection contract issued by Defendants, where it lists Defendant VAD as the "seller/dealer/vendor" of Defendants Sunpath and Northcoast products.

## APPARENT AUTHORITY

51.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

52.     Defendants Sunpath and Northcoast authorized Defendants VAD and John Doe 1 to generate prospective customers for them.

53.     The integration of their sales efforts with robocalling by Defendants VAD, Sunpath and Northcoast used was so seamless that it appeared to Plaintiff that John Doe 1, VAD Sunpath, and Northcoast all appeared to be the acting together as the same company.

54. Plaintiff reasonably believed and relied on the fact that Defendant John Doe 1 had received permission to sell, market and solicit Defendants VAD, Sunpath and Northcoast's products.

55. The apparent authority of Defendant VAD is illustrated in the vehicle protection contract issued by Defendants, where it lists Defendant VAD as the "seller/dealer/vendor" of Defendants Sunpath and Northcoast products.

## RATIFICATION

56. Sunpath, Northcoast and VAD knowingly and actively accepted business that originated through the illegal robocalls placed by John Doe 1.

57. By accepting these contacts, soliciting and executing contracts with the robocall victims, Defendants "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of John Doe 1, as described in the Restatement (Third) of Agency.

58. Sunpath, Northcoast, and VAD ratified John Doe 1's TCPA violations by knowingly accepting the benefit of a new customer despite that this customer was generated through an illegal sales call.

59. Sunpath, Northcoast, and VAD took advantage of the violations by having their salespeople solicit the prospective customers while turning a blind eye to the way the potential customer was identified.

60. Sunpath, Northcoast, and VAD ratified John Doe 1's TCPA violations by being willfully ignorant of the violations or by being aware that such knowledge was lacking.

61. Sunpath, Northcoast, and VAD caused John Doe 1 to have the actual authority of Defendant Sunpath and Defendant Northcoast. Restatement § 4.01 cmt. b.

## JOINT ENTERPRISE

62. Sunpath, Northcoast, and VAD had a tacit agreement or approved of after the fact with John Doe 1 for the marketing of their services pursuant to Defendant VAD's illegal robocalls.

63. Defendants were part of a common enterprise and had a community of interest in marketing and advertising vehicle protection plans from Sunpath, Northcoast, and VAD.

64. Defendants had an equal right to control the conduct thereof by specifying the type of people to be called and the questions that should be asked to prospective consumers.

65. Defendants had a duty to exercise due care when marketing their products.

66. Defendants' violation of the TCPA is negligence per se.

67. Because of Defendants' negligence, Plaintiff suffered actual and statutory damages.

68. Sunpath, Northcoast, and VAD are jointly and severally liable for the resulting damage caused by Defendant VAD's TCPA-violating telephone calls.

## CAUSE OF ACTION
## Violation of 47 U.S.C. § 227
## (On behalf of Plaintiff and the Class)

69. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

70. Defendants and/or their agent John Doe 1 placed calls using an automatic telephone dialing system to Plaintiff's and the Class members' cellular and residential telephones without having their prior express written consent to do so.

71. The system used by Defendants to place such automated calls had the capability to store a list of numbers and automatically dial those numbers.

72. Defendants calls were made for the purpose of advertising Defendants' products and services.

73. Defendants used an automatic telephone dialing system as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B) to generate Plaintiff's phone number as well as the phone numbers of the Class members.

74. As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling

them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop their illegal calling campaign.

75. Defendants made the violating calls "*willfully*" and/or "*knowingly*" under 47 U.S.C. § 227(b)(3)(C).

76. If the court finds that Defendants *willfully* and/or *knowingly* violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing Plaintiff's counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate the TCPA;

C. An injunction requiring Defendants to cease all unlawful calls without first obtaining the call recipients' prior express written consent to receive such calls, and otherwise protecting interests of the Class;

E. An injunction prohibiting Defendants from employing the use of an automatic telephone dialing system without obtaining, and maintaining records of the call recipients' prior express consent to receive calls made with such equipment, and otherwise protecting the interests of the Class;

F. An award of actual and statutory damages;

H. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: October 12, 2019

COMPLAINT

Respectfully submitted,

DENNIS BORN, individually and on behalf of all others similarly situated,

By:  /s/ Mark L. Javitch

Mark L. Javitch (SBN 323729)
Javitch Law Office
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: 650-781-8000
Facsimile: 650-648-0705
mark@javitchlawoffice.com

*Attorney for Plaintiff*
and those similarly situated

COMPLAINT